

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00393-CR

---

Newt Justine Porter, Appellant

v.

The State of Texas, Appellee

---

On Appeal from the 227th District Court
Bexar County, Texas
Trial Court No. DC2023CR4388

---

## MEMORANDUM OPINION

Following a bench trial, Appellant Newt Justine Porter was convicted of one count of aggravated assault causing serious bodily injury, with a deadly weapon finding, and was sentenced to a five years' incarceration. Porter contends the record does not reflect a knowing, voluntary waiver of his jury-trial right, in violation of his constitutional and statutory rights. He also maintains the evidence was legally insufficient to support his conviction and argues about the

admissibility of certain evidence at trial. For the following reasons, we affirm the trial court's judgment.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2021, two law enforcement officers were dispatched to an apartment complex for an assault in progress. They found the complaining witness, Gina Anaya, sitting by the side of the apartment complex pool with injuries to her face and blood on the ground in the immediate area around her. Photos taken at the scene show swelling on her right eye and blood on her nose and the right side of her face. EMS was called to the scene, and Anaya was taken to the hospital.

After speaking with Anaya and other witnesses at the scene, law enforcement identified Porter as her assailant. Porter was arrested and indicted on two counts of aggravated assault. Count one alleged Porter intentionally, knowingly, and recklessly caused serious bodily injury to Anaya by striking her with his hand, striking her with his foot, and picking her up and slamming her on the ground. It alleged Porter "did use and exhibit a deadly weapon, to wit: [his] hand [and] that in the manner of its use and intended use [it] was capable of causing death and serious bodily injury, during the commission of this offense." Count two alleged Porter used or displayed his hand as a deadly weapon and "intentionally, knowingly and recklessly" caused bodily injury to Anaya by striking her with "said deadly weapon." The trial court found Porter guilty of both counts but set aside the finding on count two and only entered a judgment of conviction on count one.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

2

## A. The State's case

At trial, Ayala testified that on the day of the assault, she was swimming at her apartment complex pool when Porter, who was also a resident there, and Porter's friend, Jay Gonzalez, joined her. According to Anaya, she had known Porter for about a year and they had developed a friendship. Anaya recalled that the three of them had been drinking, talking, and swimming, when Porter began arguing and yelling at her for reasons she could not recall. Anaya testified that she got out of the pool and was in the process of collecting her things to leave, when she turned around and was hit over the head. Although she could not recall the assault itself, she did recall that Jay "was there" and that he "took off" after the assault. According to Anaya, the next thing she remembered was waking up in a lot of pain, with a "pool of blood around [her]." She denied doing or saying anything to provoke Porter prior to the assault.

Anaya recalled that after the police and EMS arrived, she was taken to the hospital, where she spent three days recovering from her injuries. Anaya testified that she had a broken nose and swollen face, and because the orbital plate in her face was shattered, it was replaced with a metal plate. She recalled needing 23 to 24 stitches on the bridge of her nose and reported that she was still experiencing numbness on the right side of her face and problems with her peripheral vision on her right side as a result of her injuries.

Anaya's ex-husband, Hilbert Anaya (Hilbert) testified, without objection, that Anaya called him immediately after the incident and told him that Porter had assaulted her. When he arrived at the scene, he observed Anaya "bloodied all over" with a cut on the side of her nose and "[h]alf of her face was hanging down." Hilbert testified that he followed Anaya when she was transported to the hospital by ambulance, and she underwent surgery. He was allowed to testify, over defense counsel's objection that his testimony was speculative, that he believed the surgery was performed

3

due to the injuries Anaya sustained in the assault. Hilbert further testified that Anaya currently has a "scar on her nose that goes from one side of her nose down and across her face," and that she is no longer comfortable in a public setting or around a large group of people.

The two officers who arrived at the scene of the assault, Rosemary Bill and Carlos Lopez, testified that they observed a female, later identified as Anaya, sitting by the pool with injuries to her face and blood pooling around her. Both officers were wearing body cameras. The video from Bill's body cam was played at trial without objection. On the footage, Anaya informed Bill that she had been assaulted by a man named "Newt," identifying him as a neighbor in the apartment complex. Anaya informed Bill that she had been talking with Porter when he got mad for an unknown reason and assaulted her.[2] The footage also included statements from an EMS first responder that a witness had reported observing a man punch Anaya and kick her in the face as well as slam her head onto the concrete while she was on the ground. Bill took photos of Anaya, depicting the injuries to her face, which were admitted in evidence.

Lopez testified that while Bill was speaking with Anaya, he spoke with Ruthanna Jeffreys who informed him that she had seen the "entire assault." Defense counsel objected on hearsay grounds to allowing Lopez to testify to Jeffreys's out-of court statements, but after reviewing Lopez's body cam video, the trial court ruled Lopez's testimony was admissible under the excited-utterance exception.[3] According to Lopez, Jeffreys informed him that she heard shouting at the pool, which caught her attention, and that she observed a male assault Anaya as Anaya was exiting

---

[2] Bill testified that there was a 12-pack of beer seen on the video at the edge of the pool, but she was unable to say if Anaya was intoxicated at the time.

[3] The "excited utterance" exception allows the admission of a declarant's out-of-court statement that relates to a "startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008) (citing Tex. R. Evid. 803(2)).

the pool. Jeffreys told him that the male suspect had kicked Anaya, punched her in the face, and then "slam[ed] her head against the ground." The State sought to admit Lopez's body cam footage in evidence, but the trial court sustained defense counsel's objection to its admission on the grounds that it was duplicative of Lopez's testimony with respect to Jeffreys's statements and that it contained hearsay statements from other witnesses.

According to Lopez, after he and Bill concluded their on-scene investigation, they went to the hospital to speak with Anaya. Over defense counsel's hearsay objection, he testified that Anaya had "major injuries to her eye" and that her injuries were "not superficial." The trial court would not allow Lopez to go into any additional detail regarding the nature of her injuries.

The State also called Detective Christopher Terranova who testified that he conducted a follow-up investigation. Terranova initially confirmed that the suspect, who had been identified as Porter, resided at the apartment complex. With the assistance of the property manager, Terranova reviewed footage taken by a security camera at the complex at the time of the assault.[4] He explained that the footage only covered about a third of the pool area. Terranova described seeing a male, identified as Porter, leaning over a female, identified as Anaya, who was in the pool. He testified that Porter appeared to be agitated and was waving his arms. Although the video did not have audio, he believed it appeared that Porter was yelling at Anaya.

Terranova recalled that as Anaya exited the pool and began to walk away, Porter ran toward her at "full speed." At that point, however, because the two disappeared out of the camera's view, Terranova could not say with certainty whether Porter made contact with Anaya, but he testified

---

[4] The footage itself was not admitted in evidence because, according to Terranova, the apartment management was unable to burn a copy of the video due to technical difficulties.

that it appeared as if he did. According to the detective, the footage then showed Porter leaving the scene.

Terranova recalled that he spoke with Anaya's husband about Anaya's injuries, but the trial court sustained defense counsel's hearsay objection and he was not permitted to testify as to what he was told. Terranova acknowledged that he did not review any of Anaya's medical records, and none were admitted at trial.

## B. Porter's case

The sole defense witness was Jay Gonzalez. Gonzalez testified that on the morning of the assault, he and Porter had gone to the Comal River for two or three hours, where they shared a 16-pack of beer and each had two vodka drinks. Upon returning to Porter's apartment complex, he recalled, they went to the pool where they encountered Anaya. He testified to having met Anaya before and that he did not believe she and Porter had any "issues" between them.

At some point after they arrived, Gonzalez testified, Anaya began "antagonizing" Porter by being "flirtatious" and asking him to dance even though Porter had a girlfriend.[5] Gonzalez testified that Porter repeatedly told Anaya to stop, and that he was initially "calm" while interacting with her. However, after Gonzalez dove under water and resurfaced, he saw Anaya on the ground and Porter walking away from the pool area. Although he said he did not see the assault, he observed Anaya disoriented and bleeding from her face. Gonzalez recalled running over to Anaya to help her, asking her "what happened," and who "did this." According to Gonzalez, Anaya pointed in Porter's direction as he was walking away from the scene.

---

[5] Gonzalez testified that in the past, he had observed Anaya act in "flirtatious" and even "promiscuous" manner in social settings, and that "she like[d] to dance with the guys and have a good time."

## C. Closing arguments

In closing arguments, defense counsel first argued that the State did not present any evidence regarding use of a deadly weapon to support a finding that Porter was guilty of aggravated assault with a deadly weapon, as charged in count two. He then argued there was no evidence to establish that Anaya suffered serious bodily injury, as required for a finding of aggravated assault causing serious bodily injury, as alleged in count one. Defense counsel found it significant that the State did not present any medical testimony regarding Anaya's injuries, and argued that, at most, the State proved Porter was guilty of misdemeanor assault causing bodily injury.

The State countered that it was not required to present medical testimony to establish serious bodily injury; the State maintained that lay testimony, including the victim's own testimony, was sufficient. The State argued there was sufficient evidence to support a finding that Anaya suffered serious bodily injury, including "permanent disfigurement," based on Anaya's testimony that she had a metal plate surgically implanted around her orbital bone and Hilbert's testimony that she had scarring on her face.

## D. The trial court's judgment

At the close of the guilt-innocence phase of trial, the trial court found Porter guilty of both counts of aggravated assault, as alleged in the indictment. However, at the start of the punishment phase, the trial court announced in open court that it was setting aside the finding of guilt on aggravated assault with a deadly weapon, and that it would only sentence Porter for aggravated assault causing serious bodily injury. The trial court signed a final judgment of conviction on the count of aggravated assault causing serious bodily injury, with a finding of true on the deadly weapon allegation, and imposed a sentence of five years' confinement. This appeal followed.

## II. Issues on Appeal

Porter raises two issues on appeal. First, he contends the record does not reflect that he waived his constitutional jury-trial right, which resulted in structural error requiring reversal of his conviction. Second, he argues the evidence presented at trial was insufficient to support his conviction. Embedded in his second issue, Porter raises two arguments regarding the admissibility of Lopez's testimony. First, he argues Lopez's testimony contained inadmissible hearsay in the form of Jeffreys's out-of-court statements and its admission violated his right to confront witnesses, as Jeffreys did not testify at trial. Second, he argues Lopez's testimony regarding his observations of the crime scene was duplicative of Bill's testimony and constituted improper "bolstering."

## III. Waiver of Jury-Trial Right

In his first issue, Porter points out that a criminal defendant has a fundamental constitutional right to a jury trial. To facilitate this right, he notes Texas Code of Criminal Procedure Article 1.13 provides that the defendant in a non-death penalty case shall have the right, upon entering a plea, to waive the right of trial by jury, but that "the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state." Tex. Code Crim. Proc. art. 1.13(a). Porter argues no such waiver appears in the record, and there is nothing in the record to otherwise reflect he waived his jury-trial right. Porter asserts that a "waiver [of the right] will not be inferred from a silent record," and the lack of any documentation that he waived his jury-trial right constitutes "structural error" requiring reversal.

In its initial briefing, the State conceded statutory error in that the appellate record presented to this Court did not contain a written waiver of Porter's jury-trial right as required by

the Texas Code of Criminal Procedure. However, the State argued, because the judgment of conviction contained a recitation stating that after the parties announced ready for trial, Porter "waived the right to trial by jury" and entered his plea, we should apply the "presumption of regularity" and determine that Porter did in fact waive his jury-trial right and was not harmed by the lack of written waiver.

### A. Applicable law

The right to a jury trial at the guilt stage of trial is both a statutory and a constitutional right. *See* U.S. Const. art. III, § 2 & amend. VI.; Tex. Const. art. I, § 15; Tex. Code of Crim. Proc. art. 1.12; *see also Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009). However, a defendant has the right to waive a trial by jury. *See Adams v. United States*, 317 U.S. 269, 275 (1942). The Texas Legislature has "chosen to observe careful regulation of that constitutional right by specifying how that right may be waived." *Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex. Crim. App. 1993) (en banc). Texas Code of Criminal Procedure Article 1.13(a) lays out the formalities of a jury waiver in Texas. *See* Tex. Code Crim. Proc. art. 1.13(a); *Munguia v. State*, 636 S.W.3d 750, 757 (Tex. App—Houston [14th Dist.] 2021, pet. ref'd); *Sanchez v. State*, No. 08-22-00161-CR, 2024 WL 378858, at *4 (Tex. App—El Paso Jan. 31, 2024, no pet.) (mem. op., not designated for publication).

Article 1.13(a) mandates that the defendant "shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that . . . the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state." Tex. Code Crim. Proc. art. 1.13(a). It further provides that "[t]he consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the state shall be in writing, signed by that

attorney, and filed in the papers of the cause before the defendant enters the defendant's plea." *Id.* The Court of Criminal Appeals has distinguished between situations in which the record merely reflects a violation of the Code of Criminal Procedure due to the failure to obtain a written waiver and situations in which a defendant did not knowingly, intelligently, and voluntarily waive his constitutional right to a jury trial.

The failure to ensure that a defendant knowingly, intelligently, and voluntarily waived his right to a jury trial is categorized as "structural error defying a harm analysis because the error affect[s] the framework of the trial." *Rios v. State*, 665 S.W.3d 467, 485 (Tex. Crim. App. 2022). Courts have identified a number of factors to consider in determining whether a jury trial waiver was knowing and intelligent, including

> whether a defendant knew about his right to a jury and the nature of the right, whether the defendant executed a written jury waiver, whether the trial court admonished the defendant about his right to a jury, the defendant's education and background and legal sophistication, the level of the defendant's involvement in his defense, his ability to understand courtroom discussion regarding waiver of a jury, the words and actions of the defendant, discussions with trial counsel about the right to a jury and representations of trial counsel, what language the defendant understands and the presence of an interpreter if not English, the lack of an objection before or shortly after the bench trial began, and whether there is a docket entry indicating that the defendant expressly waived his right to a jury on the record and that waiver was voluntary, knowing, and intelligent.

*Id.* at 479–82 (citing *Hobbs*, 298 S.W.3d at 197 ("As a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial.")). As the court has recognized, "a trial court should not discharge its duty of accepting a defendant's jury waiver as a 'mere matter of rote,'" and must instead "jealously guard the right to a jury trial." *Id.* at 483–84 (citing *Patton v. United States*, 281 U.S. 276, 312 (1930)).

On the other hand, the mere failure to obtain a written waiver of a defendant's jury-trial right, as required by the Code of Criminal Procedure, is categorized as a statutory violation

reviewed for harm under Appellate Rule 44.2(b), which provides that if the error "does not affect substantial rights" it "must be disregarded." *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002). Under this standard, such a failure is considered harmless if the record otherwise reflects that the defendant "understood his right to trial by jury before his bench trial began." *Id*. at 348–49; *see also Hinojosa v. State*, 555 S.W.3d 262, 266 (Tex. App—Houston [1st Dist.] 2018, pet. ref'd) (recognizing that a defendant is not harmed by the failure to obtain a written waiver as required by the statute "if the record otherwise reflects that he knew about his right to a jury trial, and that he waived his right"). In the absence of proof to the contrary, a recitation in a judgment that the defendant waived his jury-trial right indicates that he knew of the right and chose to abandon it, and is sufficient to support a finding that the defendant was not harmed by the failure to obtain a written jury-trial waiver in violation of Article 1.13. *See Johnson*, 72 S.W.3d at 349. Thus, unless a defendant alleges that he did not understand his right to a jury trial or that he did not knowingly or intelligently waive it, such a recitation is sufficient to affirm a judgment of conviction. *Id.* (finding recitation in the judgment that defendant waived his jury-trial right sufficient to affirm the conviction where the defendant did not allege that he was unaware of his rights or that his constitutional rights were violated).

**B. Abatement of the appeal**

Here, the appellate record as initially presented to us did not contain a written jury-trial waiver but did contain a recitation in the judgment of conviction stating Porter waived his jury-trial right prior to the bench trial. Such a recitation would raise a presumption that any statutory violation in failing to obtain a written jury-trial waiver was harmless. *Id*. However, we interpreted Porter's brief as not only raising a statutory violation, but raising the constitutional issue of whether he knowingly, intelligently, and voluntarily waived his jury-trial right. Because the record was

silent on that issue, we abated the appeal and remanded to the trial court to hold a hearing to determine: (1) whether there was any evidence in the trial court's record that Porter executed a written Article 1.13 jury-trial waiver; and (2) whether Porter knowingly, intelligently, and voluntarily waived his right to a trial by jury, and relatedly, whether he consented to a bench trial, applying the factors set forth by the Court of Criminal Appeals in *Rios*. We further directed the trial court to enter written findings of fact and conclusions of law following the hearing regarding its determination.[6]

On remand, the court held a hearing at which the parties acknowledged that there was no written waiver of the jury-trial right in the record. In support of its contention that Porter was nevertheless aware of his jury-trial right and consented to waive it and go forward with a bench trial, the State offered in evidence two forms Porter signed, indicating that his case had been set for a jury trial on two occasions, on November 30, 2023 and January 12, 2024, respectively. The State also offered an "email-chain" dated March 19, 2024, between counsel and the court coordinator, in which the court coordinator, noted that the last time the parties were in court they discussed the possibility of a bench trial and asked counsel if that was still the "plan." In response, defense counsel replied, "[m]y client indicates to me he's on board."

---

[6] In *Rios*, the Court of Criminal Appeals recognized that there is a split of authority among courts of appeals regarding "whether a court of appeals can properly abate a case for a trial court to make findings of fact and conclusions of law about whether the right to a jury trial was properly waived," with the apparent majority, including this Court, utilizing abatement as a tool in determining whether a defendant knowingly waived his jury trial right. *See Rios v. State*, 665 S.W.3d 467, 469, n. 2 (Tex. Crim. App. 2022) (listing cases in which courts have abated appeals for this purpose) (citing *Snider v State*, No. 08-12-00050-CR, 2013 WL 6671510 (Tex. App.—El Paso Dec. 18, 2013, pet. ref'd) (mem. op., not designated for publication)). The Court of Criminal Appeals did not opine on whether the court of appeals' decision to abate the appeal in that case was appropriate, as the parties did not raise that issue in their briefing. *Id.* Since *Rios*, this Court has continued to use the tool of abatement to reach a determination of whether a defendant waived his right to a jury trial, as has at least one of our sister courts. *See Sanchez v. State*, No. 08-22-00161-CR, 2024 WL 378858, at *1 (Tex. App.—El Paso Jan. 31, 2024, no pet.) (mem. op., not designated for publication); *Guel v. State*, No. 05-23-00291-CR, 2025 WL 1616406, at *3 (Tex. App.—Dallas June 6, 2025, no pet.) (mem. op., not designated for publication) (court of appeals abated defendant's appeal and remanded to the trial court to hold a hearing and to make findings of fact concerning defendant's waiver of his right to a jury trial).

At the hearing, Porter's trial attorney was the only witness to testify. Porter's attorney testified that he conferred with Porter prior to trial and informed him that he had the right to a jury trial but that he could waive the right and proceed with a bench trial. He testified that he discussed with Porter the "possible consequences of each." He expressed his opinion that Porter "intentionally, knowingly and voluntarily waive[d] his right to a jury trial and consent[ed] to a bench trial." Porter did not present any evidence to the contrary.

The trial court entered written findings of fact and conclusions of law, determining that although Porter did not sign a written waiver of his jury-trial right, Porter intelligently, knowingly, and voluntarily waived his right to a jury trial. In particular, the trial court pointed to defense counsel's testimony that he had conferred with his client about the matter as well as the email exchange between counsel and the court coordinator. In addition, the trial court noted that the judgment of conviction contained a recital stating that after both parties announced ready for trial, Porter "waived the right of trial by jury and entered the plea indicated above." The court observed that the recitation was "binding in the absence of direct proof of [its] falsity," citing *Johnson*, 72 S.W.3d at 349. The court found nothing in the record to dispute the recitation.

### C. Analysis

"A trial court's findings are afforded almost total deference if they are supported by the record, especially when the findings are based on credibility." *Rios*, 665 S.W.3d at 478 (citing *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997)). "The key to whether a reviewing court defers to a finding of fact is simply whether the finding is reasonably supported by the record." *Id.* But "[f]indings unsupported by the record are discarded." *Id.*

Here, as the State points out in its supplemental brief, the trial court's findings of fact and conclusions of law are supported by the evidence presented at the abatement hearing. Porter

presented no evidence to contradict his attorney's testimony or otherwise support a finding that he did not knowingly, intelligently, and voluntarily agree to waive his jury-trial right. Nor did he provide any supplemental briefing to argue why the trial court's findings should not be regarded.

We contrast this situation with the facts in *Rios*, upon which Porter primarily relies. In that case, the Dallas Court of Appeals also abated the defendant's appeal and directed the trial court to hold a hearing to determine whether the defendant executed a written waiver of his jury-trial right, whether he consented to a bench trial, and whether the recitation in the judgment stating that he waived his jury-trial right accurately reflected the trial proceedings. *Id* at 470. The defendant testified at the abatement hearing that he informed his trial counsel he wanted a jury trial, that he was unaware his attorney had agreed to a bench trial, and that he asked his attorney to object in court the day of the trial, but his attorney failed to do so. *See Id* at 471. Trial counsel testified that he informed his client of his jury-trial right and that the case had been set for a bench trial when the parties appeared in court for trial. *Id.* However, he recalled that when they appeared before the judge that day, the judge initially told the attorneys that he did not want to try the case but then "suddenly changed his mind and rushed the parties to trial." *Id.* at 472. In the rush, trial counsel testified, he did not ensure that his client signed a written waiver of his jury-trial right. *Id*.

In concluding the record was insufficient to support a finding that the defendant knowingly and voluntarily waived his jury-trial right, the Court of Criminal Appeals found it significant that the defendant was a Spanish-speaker who did not read or write English and therefore did not understand any of the "pass slips" he signed indicating his case had been set for a bench trial[7]; that his trial attorney did not testify at the abatement hearing regarding what advice, if any, he provided

---

[7] The court noted that the record was also unclear regarding whether the defendant had signed blank pass slips, which were filled in later, or whether they were already filled out when he signed them. *Rios*, 665 S.W at 482.

14

his client with respect to his jury-trial rights; and that the record reflected no admonishment by the court to the defendant to ensure he understood his jury-trial right and was knowingly waiving it. *Id*. at 482. The court concluded: "Given that the burden of proof is on the State and the sparse record in this case, we are forced to conclude that the evidence is insufficient to show that Appellant expressly, knowingly, and intelligently waived his right to a trial by jury." *Id*. at 485.

The State emphasizes that the facts in *Rios* are far different than those in Porter's case. First, nothing in the record suggests Porter had a language barrier, as the defendant in *Rios* did, which raised a question regarding whether he understood the nature of the documents he signed prior to trial or the nature of any of the trial proceedings. Second, unlike the attorney in *Rios*, Porter's trial counsel expressly testified at the abatement hearing that he not only informed Porter of his jury-trial right, but he advised Porter of the consequences of choosing to waive that right. Third, the email exchange introduced in evidence between the attorneys and the court coordinator supported counsel's testimony that Porter agreed to the bench trial. Finally, unlike the defendant in *Rios*, Porter did not testify that he informed his attorney of a desire to have a jury trial or to object to a bench trial.

We therefore conclude the trial court's finding that Porter knowingly and intelligently waived his right to a jury trial was reasonably supported by the record. *See Wilson v. State*, No. 05-24-00321-CR, 2025 WL 579967, at *7 (Tex. App.—Dallas Feb. 21, 2025, no pet.) (mem. op., not designated for publication) (concluding that a review of the *Rios* factors supported a finding that the defendant knowingly and intelligently waived his right to a jury trial, where, among other things, the defendant did not claim that "he was deprived of legal advice as to his right to a jury trial or the pros and cons of waiving that right" and the documentation in the record supported a finding that he was aware of his right but chose to waive it) (citing *Roundtree v. State*, No. 05-22-

15

01283-CR, 2024 WL 3022799, at *3–4 (Tex. App.—Dallas June 17, 2024, no pet.) (mem. op., not designated for publication) (applying *Rios* factors, court concluded that the defendant knowingly and intelligently waived his right to a jury trial where the defendant "was thoroughly involved in his defense and personally handwrote, signed, and filed numerous motions" indicating that he was seeking a bench trial)).

For similar reasons, we conclude the trial court's finding that Porter was not harmed by the failure to obtain a written jury-trial waiver as required by the Code of Criminal Procedure was reasonably supported by the evidence presented at the abatement hearing. Given trial counsel's testimony and the documents presented at the hearing, the abatement record confirms the recitation in the judgment of conviction that Porter waived his jury-trial right. *See Sanchez*, 2024 WL 378858, at *3–4 (finding statutory error in failing to obtain a written jury-trial waiver harmless where State presented evidence at abatement hearing that defense counsel stated in an email exchange prior to trial that his client consented to a bench trial, and defendant presented no evidence at abatement hearing to the contrary); *see also Johnson*, 72 S.W.3d at 349 (concluding that the failure to obtain a written waiver was harmless where the defendant "never alleged that he did not know about his right to a jury trial, nor does the record indicate that he did not").

Porter's Issue One is overruled.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second issue, Porter argues the evidence presented at trial was insufficient to sustain his conviction, contending the State's evidence consisted of "hearsay" and "speculation," and his conviction "rests entirely on the uncorroborated testimony of Gina Anaya, whose statements were materially inconsistent, vague, and unsupported by physical or testimonial evidence." Porter

further complains that the State did not present sufficient evidence to support a finding that Anaya suffered serious bodily injury, as alleged in the indictment.

## A. Standard of review

The Fourteenth Amendment due process guarantee requires legally sufficient evidence to support every conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 916 (Tex. Crim. App. 2010). "[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."[8] *Brooks*, 323 S.W.3d at 912.

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we consider all of the evidence presented at trial in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 319). In conducting our review, we examine "events occurring before, during and after the commission of the offense." *Id.* (citing *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if

---

[8] In his briefing, Porter also argues his conviction should be reversed because the evidence presented at trial fails under a "factual sufficiency" standard of review, asserting that the State's evidence was "so weak that the verdict is clearly wrong and unjust," citing *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). However, the Court of Criminal Appeals has made it clear that the *Jackson v. Walker* standard of legal sufficiency is the sole standard of review to be utilized in challenging the sufficiency of evidence in a criminal case, and that a factual sufficiency review is no longer permitted. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010); *see also Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015) (recognizing that *Brooks v. State* "abolished factual-sufficiency review as it applies to criminal convictions"). We therefore do not consider this argument in our analysis.

the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.")).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and therefore, circumstantial evidence standing alone can be sufficient to establish guilt. *See Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 9, 13). We "evaluate all the evidence in the record, both direct and circumstantial, whether admissible or inadmissible" in determining the sufficiency of the evidence. *Hernandez v. State*, 198 S.W.3d 257, 260–61 (Tex. App.—San Antonio 2006, pet. ref'd) (citing *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)); *see also Moff v. State*, 131 S.W.3d 485, 488 (Tex. Crim. App. 2004) ("In applying the *Jackson* sufficiency review, an appellate court '*must consider all evidence* which the jury was permitted, whether rightly or wrongly, to consider.'") (citing *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988) (emphasis in original)); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (recognizing that court's legal sufficiency "review of 'all of the evidence' includes evidence that was properly and improperly admitted").

The trier of fact is the sole judge of witness credibility and the weight given to witness testimony; "the jury may choose to believe all, none, or any part of a witness's testimony, even if such testimony is contradicted." *See Cantu v. State*, 678 S.W.3d 331, 357 (Tex. App.—San Antonio 2023, no pet.). We defer to the trier of fact to "resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). Although the trier of fact may not "come to conclusions based on mere speculation or factually unsupported inferences or presumptions," the trier of fact is "permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Winfrey*, 393 S.W.3d at 771 (citing *Hooper*, 214 S.W.3d at 15). If the

18

record supports conflicting inferences, we presume the fact-finder resolved the conflicts in favor of the verdict and defer to that determination. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319).

We apply the same standard of review in a sufficiency analysis in a case involving a bench trial as we would a jury trial. *See Robinson v. State*, 466 S.W.3d 166, 172 (Tex. Crim. App. 2015); *see also Bilunas v. State*, No. 04-20-00374-CR, 2021 WL 5496161, at *2 (Tex. App.—San Antonio Nov. 24, 2021, pet. ref'd) (mem. op., not designated for publication) (recognizing same).

### B. Applicable law

Porter was convicted of one count of aggravated assault causing seriously bodily injury to Anaya, "by striking [Anaya] with [his] hand . . . [striking her] with [his] foot . . . and picking up [Anaya] and slamming her to the ground," as alleged in count one of the indictment. Under Texas Penal Code § 22.01(a)(1), "a person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." Tex. Penal. Code § 22.01(a)(1). A person commits "aggravated assault" if he either: (1) causes serious bodily injury to another; or (2) uses or exhibits a deadly weapon during the commission of the assault.[9] *Id.* § 22.02(a)(1)(2)).

---

[9] As set forth above, the trial court initially found Porter guilty of one count of aggravated assault by using a deadly weapon, as alleged in count two of the indictment, but the court set aside that finding and did not convict Porter of that offense. Although the trial court made a "deadly weapon finding" with respect to count one, that finding was only relevant to Porter's probation and parole eligibility; it was not an element of the offense as charged, nor was it relevant to the applicable range of punishment to which Porter could be sentenced. *See Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005) (en banc) (recognizing that "[w]hile a deadly-weapon finding does affect a defendant's eligibility for probation and parole, it does not alter the range of punishment to which the defendant is subject, or the number of years assessed"). Porter does not challenge the deadly weapon finding on appeal; to the contrary, he appears to acknowledge that a defendant's feet or hands can be considered deadly weapons depending on how they are used during an assault. *See, e.g.*, *Lane v. State*, 151 S.W.3d 188, 192 (Tex. Crim. App. 2004) ("After due consideration and taking into account all of the specific acts and injuries, we find that the evidence presented at appellant's trial was sufficient to persuade a rational trier of fact beyond a reasonable doubt that appellant used both his hand and his foot as 'deadly weapons' within the meaning of that phrase as defined by the Penal Code."). He does not argue that his feet or hands could not be considered deadly weapons under the facts presented at trial. We therefore do not address the sufficiency of the evidence to support the trial court's deadly weapon finding.

The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "There are no wounds that constitute "serious bodily injury *per se.*" *Wade v. State*, 663 S.W.3d 175, 183 (Tex. Crim. App. 2022) "Whether an injury constitutes serious bodily injury is determined on a case-by-case basis." *Id.* at 184. It is up to the trier of fact "to determine as a matter of fact whether a particular bodily injury can be said to be 'serious.'" *Id*. at 183–84.

## C. Preliminary evidentiary concerns

In his issue addressing the sufficiency of the evidence, Porter makes two underlying challenges to the admission of Lopez's testimony regarding (1) the out-of-court statements Jeffreys made to him at the crime scene, and (2) his observations of the crime scene itself. Porter maintains this evidence was improperly admitted and should not have been considered by the trial court in determining his guilt.[10]

As to the out-of-court statements, Porter's arguments fail for three reasons. First, Porter complains that Lopez's testimony regarding Jeffreys's out-of-court statements were improperly admitted on both hearsay and Confrontation Clause grounds. *See Haggard v. State*, 612 S.W.3d

---

[10] Porter did not include either of his challenges to the admission of Lopez's testimony as a separate issue in his brief, and instead combined his evidentiary challenges into his sufficiency-of-the-evidence issue. By combining more than one contention in a single issue, we may consider his issue multifarious and decline to consider his evidentiary arguments on that basis. *See State v. Frias*, 511 S.W.3d 797, 806–07 (Tex. App.—El Paso 2016, pet. ref'd) (citing *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010) (recognizing that a "multifarious issue embraces more than one specific ground")); *see also Sparkman v. State*, 55 S.W.3d 625, 630-31 (Tex. App.—Tyler 2000, no pet.) (recognizing same). An appellate court, however, has the discretion to address contentions presented in a multifarious issue if the contentions are sufficiently developed in the brief such that the court can determine with reasonable certainty the nature of the complaining party's point of error. *State v. Astorga*, 642 S.W.3d 69, 77 (Tex. App.—El Paso 2021, pet. ref'd); *see also Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990) (en banc) (although appellant's brief was multifarious, court exercised its discretion to consider point of error in the interest of judicial economy and justice); *but see Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000) (refusing to address multifarious grounds that were inadequately briefed). We address Porter's multifarious issue here.

318, 320–21 (Tex. Crim. App. 2020) ("The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to confront adverse witnesses."). At trial, however, Porter only raised a hearsay objection to Lopez's testimony and did not raise a confrontation objection. Accordingly, he did not preserve error on the issue of whether the testimony violated the Confrontation Clause. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (recognizing that an "objection on hearsay does not preserve error on Confrontation Clause grounds").

Second, although the trial court overruled Porter's hearsay objection and admitted Lopez's testimony on the ground that Jeffreys's out-of-court statements were admissible under the excited utterance exception, Porter does not cite any legal authority or provide any legal analysis to support his contention that the trial court erred in this ruling.

Third, he fails to address whether the admission of Lopez's testimony was harmful to his case so as to require reversal of his conviction. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (recognizing that a violation of an evidentiary rule that results in the erroneous admission of evidence is subject to a non-constitutional harm analysis). We therefore conclude that Porter waived this issue on appeal due to inadequate briefing. *See Wyatt v. State*, 23 S.W.3d 18, 23 n. 5 (Tex. Crim. App. 2000) (finding issue inadequately briefed when appellant made no argument and cited no authority to support his position, and recognizing that an appellate court may not make the appellant's arguments for him) (citing Tex. R. App. Proc. 38.1(h) (Appellant's "brief must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief")).

Porter also contends the trial court erred by allowing in Lopez's testimony regarding his observations at the crime scene because his testimony was duplicative of the description Bill

provided at trial and therefore constituted improper "bolstering" of her testimony. "'[B]olstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *See Nassouri v. State*, 503 S.W.3d 416, 419 (Tex. App.—San Antonio 2016, no pet.) (citing *Cohn v. State,* 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)). Porter cites *In re J.L.*, 163 S.W.3d 79, 87 (Tex. App.—San Antonio 2005, no pet.) for the proposition that "repetitive police testimony bolstering [of a] victim's account contributed to harm in [a] juvenile adjudication." That case, however, was a Texas Supreme Court opinion originating from Corpus-Chrisi Edinburgh that did not include any such holding.[11] Porter has not cited any other legal authority for the proposition that allowing two officers to testify to their observations at a crime scene, particularly when, as here, the officers were testifying to different aspects of the investigation, can be considered improper bolstering. Accordingly, we conclude that Porter has waived this issue on appeal due to inadequate briefing. *Wyatt*, 23 S.W.3d at 23 n. 5.

As such, the only issue before us is whether the evidence was legally sufficient to support Porter's conviction, and because we may consider both admissible and inadmissible evidence in our analysis, we take into account Lopez's testimony in our sufficiency review, regardless of its admissibility. *See Clayton*, 235 S.W.3d at 778 (considering both "properly and improperly admitted" evidence in a sufficiency review).

**D. Analysis**

We break our review of Porter's sufficiency of the evidence issue into two prongs. First, we consider whether sufficient evidence supports a finding that Porter committed an assault on

---

[11] We caution appellate counsel to ensure that she has complied with her ethical duty of candor to the court, and to ensure that she provides accurate information to the court in her pleadings. TX. R. PROF. COND. Rule 3.03 (a)(1) ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal").

Anaya. Second, we consider whether sufficient evidence supports a finding that Anaya suffered serious bodily injury as the result of the assault.

### (1) There was sufficient evidence to demonstrate Porter committed the assault

As an element of the offense, the State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *See Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984) (en banc). As a general matter, "the State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *See Gardner v. State*, 306 S.W.3d 274, 285–86 (Tex. Crim. App. 2009). Here, there was sufficient evidence from which the trier of fact could have reasonably inferred that Porter committed the assault on Anaya.

At trial, Anaya testified that shortly before the assault, Porter was arguing with her and yelling at her, and although she did not observe Porter hit her, she recalled that she was hit on the head as she walked away from him then woke up in pain surrounded by a pool of blood. Although Anaya did not expressly identify Porter as her assailant, the trial court was allowed to make a reasonable inference that Porter committed the assault, given Porter's proximity to her when the assault occurred and the fact that he was yelling at her before she was assaulted. *See Norris v. State*, No. 05-96-00305-CR, 1997 WL 418517, at *1 (Tex. App.—Dallas July 28, 1997, no pet.) (not designated for publication) (finding sufficient evidence to support defendant's conviction for aggravated assault where victim did not see the defendant stab him in the neck, but the two were seated close to each other and the stabbing occurred shortly after the two became involved in an argument).

Moreover, contrary to Porter's apparent belief, the State was not required to provide any evidence to "corroborate" Anaya's testimony, as a defendant's "[i]dentity may be established by

the testimony of a single eyewitness." *See Gibbs v. State*, 555 S.W.3d 718, 728 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *see also Cortez v. State*, No. 14-17-00719-CR, 2019 WL 2479763, at *1 (Tex. App.—Houston [14th Dist.] June 13, 2019, pet. ref'd) (mem. op.) (recognizing that "[t]he testimony from a single eyewitness may be sufficient to support a conviction") (citing *Bowden v. State*, 628 S.W.2d 782, 784–85 (Tex. Crim. App. 1982)). Even so, the State presented other evidence at trial to support a finding that Porter was Anaya's assailant, e.g., Anaya's ex-husband testified that Anaya called him after the assault and identified Porter as her assailant.

Further, Terranova testified that he reviewed the footage of the incident from the apartment's security camera, and he observed Porter leaning over Anaya in an agitated manner shortly before the assault, and then observed Porter leaving the scene. Terranova's testimony was consistent with Gonzalez's testimony, Porter's only witness, who also testified that Anaya had been "antagonizing" Porter and that Porter left the scene shortly after Anaya was assaulted. This testimony not only provided a motive for the assault, but demonstrated that Porter had the opportunity to commit the assault and then fled the scene, thereby supporting an inference of guilt. *See Ingerson v. State*, 559 S.W.3d 501, 510 (Tex. Crim. App. 2018) (recognizing that although motive is not an element of an offense, it is a "circumstance of guilt," as is "having the opportunity to [commit an offense] and then fleeing the crime scene") (citing *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012) (recognizing that opportunity and motive are circumstances of guilt)). Although it was unnecessary for the State to provide direct eyewitness testimony describing the assault itself, the jury heard the testimony of Lopez describing his interview with Jeffreys in which she informed him that she observed a male kick Anaya, punch her in the face, then "slam[] her head against the ground."

We next address Porter's contention that the evidence was insufficient to support his conviction because there were inconsistencies in details provided by Anaya and the other witnesses with respect to the events occurring before and after the assault. We disagree with this argument for several reasons.

Many of the "inconsistencies" Porter has identified in his brief do not exist. For example, Porter contends that Anaya's testimony was internally inconsistent because she "claimed that [Porter] struck her without provocation as she exited the pool and repeatedly kicked her while she was curled up on the ground," but that she was "unable to specify the number of strikes or where exactly she was hit, changing her description mid-testimony." Anaya never testified that Porter kicked her; she testified that she was unable to recall the details of the assault. Porter also states in his brief that Anaya testified Porter "left immediately after the assault yet claimed Ruthanna Jeffreys (whom he mistakenly identifies as Anaya's friend) attempted to intervene—an event that would necessarily delay Appellant's departure." Again, however, this mischaracterizes the record, as Anaya did not provide any such testimony, and instead consistently testified that she did not recall anything that occurred after she was struck on the head.[12]

Moreover, to the extent that Anaya's testimony contained any inherent conflicts, those conflicts would, at best, impact the credibility of her testimony, and it was for the trier of fact to assess the credibility of her testimony. *See Adelman*, 828 S.W.2d at 421. Similarly, though Porter contends there were conflicts in the evidence surrounding other details of the assault, such as how

---

[12] Porter's brief contains several other mischaracterizations of the evidence, such as the brief's statement that Anaya's ex-husband had never met Porter before the assault, when he expressly testified at trial that he had met Porter before. We again caution appellate counsel to be aware of her ethical obligation of candor to the court, and to ensure that she provides accurate factual information to the court in her pleadings. TX. R. PROF. COND. Rule 3.03 (a)(1).

much alcohol Anaya may have had to drink prior to the assault, those conflicts in the evidence were also for the trier of fact, not this Court, to resolve. *Zuniga*, 551 S.W.3d at 732.

Finally, Porter finds it significant that Anaya was unable to provide a motive for the assault and could not remember why Porter was upset with her and why Porter assaulted her. But the State is not required to establish a motive for a defendant's actions; a motive, while considered a "circumstance of guilt," is not an element of the offense. *See Ingerson*, 559 S.W.3d 501 at 510.

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude the evidence is sufficient to demonstrate that Porter was Anaya's assailant.[13]

### (2) There was sufficient evidence to demonstrate Anaya suffered serious bodily injury

The offense of aggravated assault, as alleged in count one, required the State to establish that Anaya suffered "serious bodily injury" in the assault, as opposed to simply "bodily injury." *See* Tex. Penal. Code § 22.02(a)(1). In the Penal Code, "serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal. Code § 1.07(a)(46).

As he did at trial, Porter contends on appeal that the evidence was insufficient to support a finding that Anaya suffered serious bodily injury. Porter's primary contention appears to center on the State's failure to present any medical records to demonstrate the nature of Anaya's injuries.

---

[13] Although Porter does not contend that he lacked the requisite mental state to commit assault, the evidence presented at trial regarding the nature of the assault and Anaya's resulting injuries supports an inference that he knowingly or intentionally committed the assault. *See Fancher v. State*, No. 10-09-00121-CR, 2011 WL 1166657, at *3 (Tex. App.—Waco Mar. 30, 2011, pet. ref'd) (not designated for publication) (finding that the trier of fact could have reasonably inferred the defendant's intent to cause bodily injury from his act of punching the victim in the head twice); *Rudolph v. State*, Nos. 02-13-00240-CR, 02-13-00241-CR, 2014 WL 3696138, at *3 (Tex. App—Fort Worth July 24, 2014, no pet.) (mem. op., not designated for publication) (evidence was sufficient to show intent where the defendant punched the victim in the mouth and caused her lip to bleed); *see generally Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978) (noting that proof of a culpable mental state usually relies on circumstantial evidence).

However, as the Texas Court of Criminal Appeals has recognized, "serious bodily injury" may be established without medical evidence "when the injury and its effects are obvious." *Wade*, 663 S.W.3d at 185. In that circumstance, "a person who has received injuries is qualified to express an opinion on the seriousness of those injuries." *Id.* (citing *Hart v. State*, 581 S.W.2d 675, 677 (Tex. Crim. App. [Panel Op.] 1979) (recognizing that "a person who has received injuries is qualified to express an opinion on the seriousness of those injuries" and finding sufficient evidence supporting aggravated assault causing serious bodily injury conviction where victim was stabbed twice and she testified her two wounds "were serious")).

The trier of fact is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence presented to it in order to conclude that a particular injury constitutes 'serious bodily injury.'" *Id.* at 185. "In determining whether the evidence supports a finding of serious bodily injury, the relevant issue is the quality of the injury as it was inflicted, not the quality of the injury after its effects are ameliorated with medical treatment." *Gonzales v. State*, 191 S.W.3d 741, 753 (Tex. App.—Waco 2006, pet. ref'd).

Here, we find sufficient lay testimony, including Anaya's, to establish that she suffered serious bodily injury under the relevant standard. Anaya testified that she lost consciousness after she was hit and woke up with a "swollen face" and in "a lot of pain" in a pool of blood. Officers at the scene, as well as Anaya's ex-husband, confirmed Anaya had suffered significant injuries to her face from the assault. Photos taken at the scene showed significant swelling on her right eye as well as blood on her nose and the right side of her face.

Anaya testified that after the first responders treated her, she was transported to the hospital, where she underwent surgery and spent three days recovering from her injuries. She reported that she sustained a broken nose and that because the orbital plate in her face was shattered, it was

replaced with a metal plate. Although evidence that a victim underwent surgery, standing alone, does not support a finding that the victim suffered serious bodily injury, courts have found evidence that a metal plate was implanted into a victim's body during the surgery supports a finding of serious bodily injury. *Wright v. State*, 494 S.W.3d 352, 362, n. 5 (Tex. App.—Eastland 2015, pet. ref'd); *see also Nash v. State*, 123 S.W.3d 534, 540 (Tex. App.—Fort Worth 2003, pet. ref'd) (finding that victim suffered serious bodily injury where he had a metal plate and rod placed in his ankle following assault and walked with a limp); *Fleming v. State*, 987 S.W.2d 912, 917–18 (Tex. App.—Beaumont 1999), pet. dism'd, 21 S.W.3d 275 (Tex. Crim. App. 2000) (en banc) (finding serious bodily injury where victim had a metal plate implanted into his pelvis without which victim would have been unable to walk).

In addition, Anaya testified that she needed 23 to 24 stitches down the bridge of her nose following the assault, and her ex-husband observed that Anaya has still has a scar running from one side of her nose down and across her face. Smaller, less visible scars are generally considered insufficient to constitute serious bodily injury. *McCoy v. State*, 932 S.W.2d 720, 724 (Tex. App.—Fort Worth, 1996, pet. ref'd) (ruling that there was not serious bodily injury since the victim only had a scar on the mouth that was barely visible); *Hernandez v. State*, 946 S.W.2d 108, 113 (Tex. App.—El Paso 1997, no pet.) (holding there was no serious bodily injury since victim only had a one-inch scar on the abdomen). However, if a scar can be considered a "significant cosmetic deformity," it will support a finding of serious bodily injury. *Wright*, 494 S.W.3d at 362, n. 5 (citing *Hernandez*, 946 S.W.2d at 113 (finding that scarring alone was insufficient to support a finding of serious bodily injury where there was no evidence that it created a "significant cosmetic deformity")). In general, this is a question of fact for the fact-finder determine. *See Wade*, 663 S.W.3d at 188 (recognizing that the question of whether a victim was permanently disfigured by

the partial loss of his earlobe was a question for the trier of fact to decide). Here, because the evidence at trial demonstrated that Anaya's scar ran the length of her face, the trial court could have considered the scar to be a significant cosmetic deformity in support of its finding of serious bodily injury.

Finally, Anaya testified that she continues to have numbness on the side of her face and issues with her peripheral vision stemming from the assault. Evidence of such lingering effects from an assault may also support a finding that the victim suffered serious bodily injury. *See Johnson v. State*, No. 07-02-0440-CR, 2003 WL 22332274, at *1 (Tex. App.—Amarillo Oct. 13, 2003, no pet.) (not designated for publication) (ruling there was sufficient evidence when victim sustained blows to the head and victim could still feel effects from his injuries a year after the assault); *Williams v. State*, No. 06-10-00156-CR, 2011 WL 808957, at *2–3 (Tex. App.—Texarkana Mar. 9, 2011, no pet.) (mem. op., not designated for publication) (ruling that evidence was sufficient to find serious bodily injury when victim suffered extended impairment of his jaw, and at the time of trial, injuries prevented the victim from eating hard food).

Viewing the evidence in the light most favorable to the trier of fact's verdict, we conclude that a rational trier of fact could have found that Anaya suffered serious bodily injury as the result of the assault. We therefore find legally sufficient evidence to support Porter's conviction for aggravated assault causing serious bodily injury.

Porter's Issue Two is overruled.

## V. CONCLUSION

For the above reasons, we affirm the trial court's judgment.

29

LISA J. SOTO, Justice

June 5, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)